### P. F. Eastin v. William Ferguson.

### No. 340.

1. **Map as Evidence.**—A map of Orange County, sent along with the record, but not made a part of it, can not be referred to as constituting part of the evidence at the trial.

2. **School Lands—Sales.**—Isolated sections may under the law be sold to others than actual settlers; but when, in a suit between one who was not an actual settler, but to whom the land had been awarded by the Commissioner of the Land Office, and one who was an actual settler and head of a family, and whose settlement was subsequent to the award by the Commissioner, the judgment was rendered for the actual settler, and there is no evidence in the case showing that the section was isolated, it will be presumed, in support of the judgment, that it was not an isolated section.

3. **Award by Commissioner, Inquiry Into.**—A fraud perpetrated upon an officer of the State, by which he is induced to do an act which he has the power to do, though a wrong or injury to the State result, can not be avoided by a third party.   But an act which an officer has no power to do is binding on no one, and confers no right on him for whose benefit it was performed.

4. **Same.**—It has been held that a sale by the Commissioner under the Act of 1887, to one not an actual settler in good faith, confers no right, and is no obstacle to the acquisition of the same land by an actual settler; wherefore the contention of appellant, that the award of the land by the Commissioner can not be inquired into, and is binding upon every one except the State, can not prevail.

5. **Actual Settler, Rights of.**—Any person possessing the requisite qualifications, finding a section of school land which is not detached and isolated, has the right under the statute to settle upon and purchase it. and can not be deprived of such right by a previous contract made by the Commissioner with another, not an actual settler.

6. **Powers of Officers.**—When a Constitution or law, defining the power of an officer, authorizes him to perform an act under conditions, the determination of the existence of which is by such law, either expressly or by necessary implication, committed to his sole discretion, his decision is binding on other departments; but the courts must declare the law, and ascertain the facts to which it applies, when it becomes necessary for the enforcement of private rights.

APPEAL from Orange.    Tried below before Hon. W. H. FORD.

*Perryman, Gillaspie & Bullitt,* and *Gordon Bullitt,* for appellant.—1. The purchasers of isolated and detached sections of school land are not required to settle upon the same, as residence upon this kind of school land is not required.   Laws of 1889, ch. 56, sec. 22.

2. The Commissioner of the General Land Office of Texas having sold the land in controversy to appellant as "detached and isolated" prior to the time when the appellee settled on the same, the appellee was a trespasser; and the question as to whether the land in controversy was detached and isolated or not could not be raised by appellee in this suit, as the decision of the Commissioner of the General Land Office upon this question, as between the parties to this suit, was final, and could only be attacked by direct proceedings by the State to set aside the conveyance to appellant on account of fraud in procuring purchase.   2 Sayles' Civ. Stats., art. 4048; Noble v. Cattle Co., 69 Texas, 434; Smith v. Walton, 18 S. W. Rep., 217.

No brief for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—This is an action of tresspass to try title, brought by appellant, to recover a section of land designated as number 14, in Orange County, located and surveyed as public school land by the Texas & New Orleans Railway Company.   Defendant pleaded "not guilty."

Both parties claim through purchases from the State, under facts developed in the trial below, as follows:

Appellant, without having settled on the section, made application to the Commissioner on the 29th day of August, 1892, to purchase it at the price which had been fixed for it, tendering one-fortieth of such price required as the cash payment, and complying with all the requirements of law, except that as to actual settlement.   On the 15th of September, 1892, the Commissioner accepted the application, and so notified the plaintiff.

On the 3rd day of September, 1892, appellee settled with his family upon the section, and made application in due form, with a tender of the requisite cash payment, to purchase the land as an actual settler.   The Commissioner rejected this application, because of the prior one which had been made by appellant, and tendered back to appellee the money sent up by the latter, which appellee declined to receive.

Appellee was a married man, without a home, and entered upon this land in good faith, with the purpose of making it his home.

Before either application was made the land was classed as " dry grazing" land, and valued at $2 per acre.   In accepting appellant's proposi-

tion the Commissioner treated the section as being isolated and detached from other public lands. Upon this point the statement of facts contains the following reference, which is all that appears in the record relating to the situation of the premises: "The land in controversy is located on the ground as shown by the map of Orange County hereto attached, showing the school lands located by the Texas & New Orleans Railroad Company, which are marked thereon by red cross thus, X, and said section 14 being designated by two red crosses thus, XX."

No map is either attached to or set out in the statement, or otherwise referred to in the record. We find among the papers what purports to be a map of Orange County, but there is nothing to identify it as evidence used in the trial below. The record contains no statement of the findings and conclusions of the judge.

The judgment was for the defendant.

*Opinion.*—The Act of the Legislature approved April 1, 1887, and the amendments approved April 8, 1889, regulate the sales of public school lands by the Commissioner of the General Land Office, and all of his authority to make sales of such lands must be derived from the provisions of those statutes. Laws 20th Leg., 1887, pp. 83–91; Laws 21st Leg., 50–53.

The first section of the first named act expressly declares that all such sales shall be made under its provisions. Section 5 of both acts provides that sales shall be made to actual settlers only. Other provisions are introduced to enforce this rule, and to prevent any evasion of it. In neither of the acts is authority given to sell to any person but an actual settler any lands except such as are specified in the latter part of the twenty-second section of the Act of 1889, which provides, "and all sections or fractions of sections in·all counties organized prior to the 1st day of January, 1875, except El Paso, Pecos, and Presidio Counties, which sections are detached and isolated from other public lands, may be sold to any purchaser, except to a corporation, without actual settlement, at not less than $2 per acre, upon such terms as the Commissioner of the General Land Office may prescribe."

It is upon this provision that appellant bases his claim that he could lawfully acquire title, by purchase from the State, of the land in controversy, without being a settler.

If we are to assume that the section in question was isolated and detached from other public lands, appellant must prevail. And for the purposes of this case it may be conceded that the action of the Commissioner in classing and treating it as belonging in the category specified by the statute affords presumptive evidence that its situation is such as to authorize the sale. But against such presumption we have the judgment of the court below, which must stand, unless it is affirmatively shown by

the record to be wrong. The statement of facts shows that a map of Orange County, representing the situation of the section with reference to other public lands, was used in evidence in the court below. This map is not in the record, nor presented to us in such manner as to enable us to notice it. Loose documents found among the papers can not be referred to as constituting part of the evidence at the trial. Stephens v. Bowerman, 27 Texas, 18. We are not therefore informed as to what facts the map would show. It is evident that it may have shown that the sec-·tion in question was not detached and isolated from other public lands. If that fact will sustain the judgment, it must be presumed that it was made to appear by the map. Id.

The question, therefore, as to the proper construction of the terms used in the statute, in other words, as to what is meant by isolated and detached lands, is not before us. We must assume that this land was clearly outside of the terms of the exception made by the statute, if the court below could properly inquire into that question, and if the fact found authorized the judgment.

But appellant contends, that in this suit between himself and a claimant under an application to buy made subsequent to his own, no inquiry can be made into the validity of the contract made by him with the Commissioner of the General Land Office, acting for the State; and that such contract is binding upon every one except the State, and can only be attacked by the State through its proper officers. We can not adopt this view.

As we have seen, the law under which, alone, authority in the Commissioner to make sales can be claimed, carefully excludes the construction that power is intended to be lodged in him to sell to any but actual settlers, unless the land is detached and isolated. · There is no language used to indicate an intent to submit the question solely to his discretion. His power is made to depend on the existence of the fact. He can not by his decision create facts which do not exist, nor clothe himself with a power which does not arise out of the actually existing conditions. The Legislature conferred such authority as he possesses in this matter, and could properly define its limits. These can not be extended by himself.

The case of Noble v. Magnolia Cattle Company, 69 Texas, 434, referred to by appellant, was one in which the lessee of the land sought to avoid a contract of purchase made by an actual settler, on the ground that the settler had perpetrated a fraud by obtaining the land at a reduced price as "dry land," when in fact it was "watered." It was held that this, if true, constituted a fraud on the State, which the State alone could take advantage of, and that the contract was valid so long as the State did not avoid it. But there was the power to make the sale unquestionably vested in the officer.

A fraud perpetrated upon an officer of the State, by which he is induced

to do an act which he has the power to do, though a wrong or injury to the State result, can not be avoided by a third party.  But an act which an officer has no power to do is binding on no one, and confers no right on him for whose benefit it was performed.  This distinction is recognized by all of the authorities.  It has been held that a sale by the Commissioner under the Act of 1887 to one not an actual settler in good faith confers no right upon the purchaser, and is no obstacle to the acquisition of title to the same land by one subsequently entering and complying with the law.  Metzler v. Johnson, 1 Texas Civ. App., 137.

The proposition contended for, it seems to us, is inconsistent with the provisions and the policy of the law under which the Commissioner acted. The purpose is plainly manifested to define by the provisions of the law itself what character of lands may be sold and what classes of persons may purchase.  These questions are not left to the discretion of the Commissioner, but are settled by the terms of the statute.  He may sell, as directed by the law, to actual settlers all the lands specified; and may sell to no other class of persons any of them except those which are isolated and detached.  How lands are situated is a question of fact, and whether their situation brings them within the terms of the statute is a question of law, which the Commissioner must determine in making a sale; but they are questions which may be passed upon by others as well as by that officer.

A court which is the proper tribunal for the determination of controversies of this character is not to be precluded from ascertaining the facts and applying the law by the action of the Commissioner, unless his decision has been made final by the law.

Any person possessing the requisite qualifications, finding a section of school land which is not detached and isolated, has the right under the statute to settle upon and purchase it.  Of such right he can not be deprived, we think, by a previous contract made by the Commissioner with another not an actual settler, because such other had no right to buy, and the Commissioner no power to sell to him.

It is true that when a constitution or law defining the power of such an officer authorizes him to perform an act under conditions, the determination of the existence of which is by such law, either expressly or by necessary implication, committed to his sole discretion, his decision is binding upon other departments.  But ordinarily the courts must declare the law, and must ascertain the facts to which it applies, where this becomes necessary to the enforcements of private rights.  Cool. Const. Lim., 51, 55; Sedg. on Stat. and Const. Law, 329, 330.

We are of the opinion, that it was competent for the court to admit evidence as to the situation of this land with reference to other public lands; and if the court found as a fact that the land was not isolated and detached, it was proper to hold that the contract under which appellant

claimed was void, and conferred no right upon appellant to oust appellee from possession.

The judgment therefore is affirmed.

*Affirmed.*

Delivered November 9, 1893.