No. 23,399.

## VACUUM OIL COMPANY, *Appellee*, v. THE WICHITA INDEPENDENT CONSOLIDATED COMPANIES et al., *Appellants*.

### SYLLABUS BY THE COURT.

BULK SALE OF MERCHANDISE—*Bulk-sales Law Not Complied With—Rights of Creditors of Vendor*. A dealer in motorcycles, bicycles and accessories, who also sold small quantities of oil supplied him by plaintiff under annual contracts for 100 barrels of oil in deliveries of a few barrels at a time, changed his mode of receiving his annual supply, and received an entire carload of ninety barrels at one delivery. He stored the usual amount which he had been accustomed to receive in his place of business, and stored the remainder, about eighty-five barrels, in a public warehouse. Having this large supply on hand, he determined to alter his former usual course of business, which was selling oil in gallon quantities, and to that end he employed a salesman to solicit orders for barrel lots. Some such orders were secured but not filled. The dealer sold and delivered the entire stock of oil stored in the warehouse to defendants and they paid him the agreed price therefor, knowing at the same time that plaintiff had not been paid for the oil thus delivered to them. There was no compliance with the provisions of the bulk-sales law. *Held,* that the sale to defendants was not made in the ordinary course of business, and that the defendant purchasers were liable to plaintiff for the amount due on the eighty-five barrels of oil.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 7, 1922. Affirmed.

*L. P. Brooks,* of Wichita, for the appellants.

*T. A. Noftzger, George W. Cox,* and *W. R. Glass,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action under the bulk-sales law.

It appears that one Harley Stephens, of Wichita, was engaged in selling motorcycles, bicycles and accessories, and lubricating oils and greases. He had a contract with the plaintiff whereby he was to purchase from it his year's supply of oil, about 100 barrels, at a reduced price. His place of business was small and his sales of oil were in small quantities, and the plaintiff supplied his requirements by delivering a few barrels at a time. Stephens' business was thus conducted for several years.

The contract was an advantageous one to Stephens, and in 1917 he changed his mode of getting deliveries from plaintiff, and received his year's supply, an entire carload of oil of ninety barrels, at one delivery. He stored the usual amount, about five barrels, at his place of business, and stored the remainder, about eighty-five bar-

rels, in a warehouse of a public storage company a few blocks away. With this large supply on hand, Stephens employed a salesman to sell this oil in barrel lots, and this salesman obtained some orders, but these were not filled, because meantime Stephens disposed of the eighty-five barrels by a cash sale of it to The Wichita Independent Consolidated Companies, whose assets and liabilities passed to its successor, The Sterling Oil & Refining Company. Stephens invested the money in another line of business. Plaintiff took judgment against him for the purchase price of the oil, but he was judgment proof.

At the time of the sale Stephens informed his vendee that he had not paid for the oil, but he gave no bond to protect the plaintiff as creditor nor did he comply with the bulk-sales act in any respect.

Plaintiff sued the purchaser of the oil and its successor. The facts were developed partly by stipulation of the parties, and partly by depositions. A jury was waived, and the trial court gave judgment for the plaintiff.

The defendants contend that the bulk-sales law does not cover the situation here presented. Its pertinent provision reads:

"The sale or disposal of any part or the whole of a stock of merchandise . . . otherwise than in the ordinary course of his trade or business, shall be void against the creditors of the seller, unless," etc. (Gen. Stat. 1915, § 4894.)

Defendants say that as the district court tried this case on a stipulation of facts and depositions, this court should make an independent study of the evidence. This we have done, and we reach the same conclusion as that arrived at by the district court. While it is true that in the purchase of his supply of oil for the year 1917 Stephens did not follow his former custom of getting a few barrels at a time, and while he did set on foot a plan to expand his business, by selling oil by the barrel instead of by the gallon as he had theretofore done, yet when that enlarged mode of doing business was begun, such new mode then became "the ordinary course of his business.". But Stephens did not pursue this course of business. He suddenly and without notice to his creditor terminated that course of business by a disposal of the entire stock. He had acquired that stock for the purpose of sale in barrel lots, not as a mere isolated speculation. Certainly this summary disposition of his entire stock was not in the ordinary course of his business, whether measured by his former mode of transacting it or the new course of business upon which he had embarked. There is no pretense that

the statute was complied with, and the purchaser knew Stephens had not paid for the oil, so the liability of the defendants cannot be denied. The bulk-sales law is remedial. It is designed to frustrate fraud upon creditors, and for that reason it is to be liberally construed. It was the duty of the defendants to hold within their control enough of the price to satisfy plaintiff's claim for payment. (*Saunders v. Graff,* 103 Kan. 261, 262, 173 Pac. 413; *Bank v. Davis.* 103 Kan. 672, 673, 674, 175 Pac. 972.)

The judgment is affirmed.